| | |
|---|---|
| 1 | Julie E. Schwartz, Bar No. 260624 |
| 2 | JSchwartz@perkinscoie.com<br>PERKINS COIE LLP |
| 3 | 1201 3rd Ave #4900, Seattle, WA 98101<br>Telephone: +1.206.359.8000 |
| 4 | Facsimile: +1.206.359.9000 |
| 5 | Michael C. Bleicher, Bar No. 313892<br>MBleicher@perkinscoie.com |
| 6 | 700 Thirteenth Street, N.W., Suite 800<br>Washington, DC 20005-3960 |
| 7 | Telephone: +1.202.654.6200<br>Facsimile: +1.202.654.6211 |
| 8 | Attorneys for Non-Party |
| 9 | GOOGLE LLC |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE COURTHOUSE

| | | |
|---|---|---|
| IN RE EX PARTE APPLICATION OF TEAM CO., LTD., | | Case No. 5:22-mc-80183-VKD |
| Applicant. | | **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA**<br><br>Date: December 13, 2022<br>Time: 10:00 a.m.<br>Courtroom: 2, 5th Floor<br>Judge: Virginia K. DeMarchi |

## NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY SUBPOENA

**PLEASE TAKE NOTICE THAT** on December 13, 2022, at 10:00 a.m., or on such other date as the Court directs, in Courtroom 2 of the United States Courthouse, located at 280 South 1st Street, San Jose, California 95113, before the Honorable Virginia K. DeMarchi, Non-Party Google LLC, ("Google") will and hereby does respectfully move this Court for an order to quash or modify the September 21, 2022 subpoena to Google ("Subpoena") in this action under 28 U.S.C. § 1782 (the "Subpoena"). Google brings this Motion pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which requires a court to quash a subpoena that requires disclosure of protected matter. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Michael C. Bleicher, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Google respectfully requests that the Court quash the Subpoena to the extent Applicant has not satisfied the First Amendment's requirements for unmasking anonymous speakers under the fourth factor set forth by *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

Dated: October 28, 2022         **PERKINS COIE LLP**

By: *s/ Julie E. Schwartz*
Julie E. Schwartz
Michael C. Bleicher

Attorneys for Non-Party
GOOGLE LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Respondent Google LLC ("Google") brings this Motion to Quash or Modify Applicant Team Co., Ltd.'s ("Applicant") September 21, 2022, subpoena to Google ("Subpoena") in this action under 28 U.S.C. § 1782 ("Section 1782").

Applicant is seeking to unmask an anonymous reviewer of Applicant's restaurant who left a one-star review of the restaurant on their Google business profile on Google Maps. The speech appears to be an innocuous recounting of an experience that the patron had at the restaurant and their opinions regarding their experience. Google therefore brings this Motion to ensure that the Court considers whether the account holder should, in fact, be unmasked when considering the safeguards applicable to anonymous speech. This is particularly important given the severity of Japan's defamation law. In the criminal context, an online speaker could face up to three years in jail for defamation and up to one year for insults.[1]

Under the safeguards applicable to anonymous speech, Applicant must first demonstrate a *prima facie* claim for defamation under Japanese law. *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *4 (N.D. Cal. Sept. 9, 2021) (applying the standard set forth in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005) ("*Highfields*")); *In re Ex Parte Application for Himeka Kaminaguchi*, Order, Case No. 20-mc-80124-NC, Dkt. 25 at 8 (N.D. Cal. Feb. 8, 2021) (same). The speech at issue appears to be, at most, protected opinion or non-actionable observation.

Second, it does not appear that the balancing of harms weighs in Applicant's favor. *Highfields*, 285 F. Supp. 2d at 974. Applicant merely concludes that the review has harmed its business, but there is no evidence showing a causal connection between the review and the decline in potential business. On the other hand, the harm from chilling anonymous speech on Google's platform is a serious concern. *See In re Tagami*, No. 21-MC-80153-JCS, 2021 WL 5322711, at *4 n.2 (N.D. Cal. Nov. 16, 2021) (expressing concern, in the context of reviews on

---

[1] *See* Articles 230-231 of the Japanese Criminal Code; *see also Japan's Tougher Penalties Against Defamation Go Into Effect*, NIPPON (July 7, 2022 11:14 am JST), https://www.nippon.com/en/news/yjj2022070600869.

Google Maps, that Section 1782 requests to identify anonymous reviewers "will create a chilling effect on the speech of anonymous reviewers or embolden entities which seek only to harass or intimidate the speakers"). This is particularly true given that anonymous speakers could be threatened with not only civil, but also criminal defamation proceedings in Japan.

Accordingly, Google respectfully requests that the Court quash or modify the Subpoena to the extent Applicant has not satisfied the safeguards applicable to anonymous speech.

## II.   FACTUAL BACKGROUND

Applicant is a corporation that operates a restaurant in Japan. ECF No. 1-1, ¶¶ 1-3. Google Maps is a service operated by Google, which allows people with a Google account to write reviews and rate businesses. *Id.*, ¶¶ 6-7. According to Applicant, many customers find Applicant's restaurant by searching for it on Google Maps. *Id.*, ¶ 6. Those customers view Applicant's Google Maps business profile, and reviews and ratings are displayed as search results. *Id.*, ¶ 8.

On May 10, 2022, an anonymous Google account holder posted a one-star rating of the restaurant accompanied by the following review, as translated by Applicant:

> When I went last time, a customer at around 12:45 on May 2 dropped 140,000 yen and couldn't get the matter resolved by phone afterwards, so I wouldn't go here! Maybe it was a customer or someone working at this restaurant? It might have been better to call the police.

ECF No. 1-3 at 3.

On July 20, 2022, Applicant applied to the Court for Discovery pursuant to Section 1782 to identify the anonymous speaker to bring a defamation lawsuit in Japan. *See* ECF No. 1. Applicant claims that the review is false, accuses the restaurant of committing a crime, and has injured the restaurant by damaging its reputation. *See id.* at 3; *see also* ECF No. 1-1, ¶¶ 10-11. Applicant claims that no employee stole 140,000 yen, and the "Restaurant never received any call from anyone concerning money." ECF No. 1-1, ¶ 10.

On September 7, 2022, the Court issued an order authorizing Google to move to quash the Subpoena within 30 days from the date of notice to the account holder. ECF No. 14 ("Order"). Applicant served the Subpoena on Google pursuant to the Court's Order on September 21, 2022.

*See* Declaration of Michael C. Bleicher ("Bleicher Decl."), ¶ _. Google provided notice of the Subpoena to the account holder on September 30, 2022, making its deadline to move to quash fall on October 31, 2022 (because October 30, 2022 is a Sunday). *See id.*, ¶ _. This Motion follows.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Also, in Section 1782 actions, the following factors govern whether a subpoena should be issued (or should have been issued): (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004).

### IV.  ARGUMENT

Anonymous online speech is protected by the First Amendment to the United States Constitution. The Ninth Circuit recognized that, "[a]s with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)).

This protection applies in the context of Section 1782 applications when a foreign civil litigant, such as Applicant, seeks discovery in the United States with the assistance of United States courts. Specifically, where a Section 1782 implicates anonymous speech, courts are required to engage in a First Amendment analysis in order to determine whether the request is unduly intrusive or burdensome under the fourth discretionary factor under *Intel*. *See, e.g.*, *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *5 (granting motion to quash a subpoena seeking to identify anonymous account holders because plaintiff's subpoena was "unduly burdensome under

*Intel*"); *Kaminaguchi*, Order, Case No. 20-mc-80124-NC, Dkt. 25, at 5 (considering anonymous speech arguments in the context of the fourth factor).

Courts have held that, because Section 1782 actions are evaluated in the context of the Federal Rules of Civil Procedure, foreign litigants must demonstrate good cause for early discovery under Federal Rule of Civil Procedure 26(d) using the following factors, which considers whether the applicant:

> (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information.

*In re Frontier Co., Ltd.*, No. 19-mc-80184-LB, 2019 WL 3345348, at *3 (N.D. Cal. July 25, 2019) (citing *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *4 (N.D. Cal. Nov. 15, 2013)).

However, demonstrating that a subpoena could survive a motion to dismiss is not enough in the context of anonymous speech. Instead, anonymous speech implicates the *Highfields* test, which requires a court to "'go beyond the pleadings to determine if there is an evidentiary basis for concluding that the requested discovery is appropriate.'" *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *5 (applying *Highfields* in a Section 1782 action); *see Kaminaguchi*, Order, Case No. 20-mc-80124-NC, Dkt. 25 at 8 (same); *see also In re PGS Home Co. Ltd.,* No. 19-MC-80139-JCS, 2019 WL 6311407, at *1 (N.D. Cal. Nov. 25, 2019) (citing *Highfields*, 385 F. Supp. 2d at 975) (imposing a higher evidentiary standard under *Highfields* in a Section 1782 action because "[t]he standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing interests").

Under the first step of the *Highfields* test, a litigant must first demonstrate a *prima facie* cause of action supported by *competent* evidence. *Music Grp. Macao Comm. Offshore Ltd., v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Supp. 2d at 975-76). Allegation and speculation are insufficient. *Id*. (original emphasis). If "any essential fact or finding lacks the requisite evidentiary support," a court may not enforce the subpoena. *Id*. at 976.

Even if a plaintiff satisfies the first step of *Highfields*, a court must still weigh the harm that would be caused to the plaintiff and defendant's interests, should the court order disclosure of the defendant's identity. *In re Yasuda*, No. 19-MC-80156-TSH, 2020 WL 759404, at *6 (N.D. Cal. Feb. 14, 2020). Absent satisfaction of both steps of the *Highfields* test, the plaintiff cannot discover the anonymous speaker's identity. *See Music Grp. Macao*, 82 F. Supp. 3d at 985-87.

As explained below, Applicant does not appear to satisfy the requisite First Amendment standards under both steps of the *Highfields* test.

### A. Applicant does not appear to have demonstrated a *prima facie* cause of action under Japanese law supported by evidence.

As a preliminary matter, Applicant does not appear to have made a *prima facie* claim of defamation under Japanese law. *Music Grp. Macao*, 82 F. Supp. 3d at 983 (requiring a *prima facie* claim of defamation under Japanese law supported by competent evidence) (citing *Highfields*, 385 F. Supp. 2d at 975-76). To do so, Applicant must set forth the legal standard for defamation and address how the speech could withstand scrutiny in Japan. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 (granting motion to quash on the grounds that the applicant's claim for defamation was conclusory, and the applicant failed to "provide the applicable Japanese legal standard for defamation" and to "address whether a claim based on the tweet could withstand a motion to dismiss in Japan"). Applicant names two sections of the Civil Code of Japan but does not explain how the speech at issue is actionable under either provision. Instead, Applicant only provides a highly conclusory statement from its Japanese counsel which states, without more, that a suit under those two sections would withstand a motion to dismiss in Japan. *See* ECF No. 1-1, ¶¶ 10-11. This is insufficient. *See Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4.

The speech at issue details an individual's negative impressions of a restaurant operated by Applicant. Specifically, the speaker states that "[w]hen I went [to the restaurant] last time, a customer at around 12:45 on May 2 dropped 140,000 yen and couldn't get the matter resolved by phone afterwards, so I wouldn't go here! Maybe it was a customer or someone working at this restaurant? It might have been better to call the police." ECF No. 1-3 at 3.

Applicant offers blanket denials which do not invalidate the review's substance. Specifically, Applicant claims that (1) no *employee* stole 140,000 yen, and (2) the restaurant did not "receive[] any call from anyone concerning money." ECF No. 1-1, ¶ 10; *see id*., ¶ 11. But the review only speculates that "*a customer or* someone working at this restaurant" was responsible for the missing yen. ECF No. 1-3 at 3 (emphasis added). Likewise, the review's assertion that the customer "couldn't get the matter resolved by phone" is not necessarily inconsistent with Applicant's denial of having received a phone call. *Id*. Applicant does not address the review's core complaint that a customer lost money at the restaurant, leaving "open the possibility that . . . the challenged statement remains substantially true." *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1021–22 (2005); *see also Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. SACV 15- 02034 JVS (JCGx), 2019 WL 1751837, at *10 (C.D. Cal. Feb. 28, 2019) (finding that a self-serving declaration alleging that a website contained "false accusations" was insufficient to demonstrate that the statement fell outside of the protections of the First Amendment).

Accordingly, the speech appears to be either a "protected opinion about . . . [a] business by an actual . . . customer," which would not "survive a motion to dismiss in a civil action in Japan," or factual, non-actionable statements. *In re PGS Home Co. Ltd*., 2019 WL 6311407, at *4. Applicant's limited evidence, namely, blanket denials from employees about the events at issue that do not squarely refute the review's specific language, leaves open the possibility that the speech does not rise to the level of defamation under Japanese law. *See Uchida v. Youtube, LLC*, Order, Case No. 3:22-mc-80155-JSC, Dkt. 18 (N.D. Cal. Oct. 3, 2022) ("Without evidence that such an innocuous question could be considered defamatory, Mr. Uchida has not established that a lawsuit is under reasonable contemplation" in Japan); ECF No. 1-1, ¶ 11.

### B.     The balance of harms weighs in favor of the anonymous speaker.

Further, under the second step of the *Highfields* test, "the court must . . . 'assess and compare the magnitude of harms that would be caused' to the plaintiff's and defendant's competing interests if the court ordered disclosure of the speaker's identity." *In re Yasuda*, 2020 WL 759404, at *6 (citing *Music Grp. Macao*, 82 F. Supp. 3d at 983). A subpoena may be quashed if, standing alone, the balancing of harms weighs in favor of the anonymous speaker. *See*

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*, No. 20-MC-80214-VC, 2022 WL 2205476, at *7 (N.D. Cal. June 21, 2022) (noting that even if the Applicant in a DMCA action had demonstrated a *prima facie* claim, "the subpoena would still need to be quashed because the balance of equities" tilted in the anonymous speaker's favor).[2]

Applicant also does not appear to satisfy this second step. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *5 (finding evidence of harm insufficient where there was no evidence that attendance at a university declined as a result of allegedly defamatory speech on online platform). Applicant's only evidence is an unsubstantiated claim that the restaurant's reputation has suffered. *See* ECF No. 1 at 3. Applicant does not offer any detail at all to quantify or substantiate this denial. It provides no data showing that the restaurant's reputation has measurably declined, such as an accounting of revenue or other metrics reflecting customer traffic. Nor does it adduce any evidence that any supposed reputational harm was caused by the anonymous review, when any number of factors could impact a business at any given time. Instead, Applicant relies on only a single, conclusory statement. *See id*.

On the other hand, if the Court orders disclosure of the anonymous speakers' identities, there is a real risk of harm. Unmasking the account holder "poses a real threat to chill protected comment on matters of interest to the public." *Highfields*, 385 F. Supp. 2d at 980–81. Indeed, in the context of a business review on Google Maps, another court in this District recognized that there have been a substantial number of applications filed "seeking personally identifiable information from Google for the purpose of identifying of negative reviewers," and expressed concern "that the influx of these requests will create a chilling effect on the speech of anonymous reviewers or embolden entities which seek only to harass or intimidate the speakers." *Tagami*, 2021 WL 5322711, at *4. Likewise, another court in this District denied an application to identify a reviewer on Google maps on the grounds that it was likely a "fishing expedition" and that the applicant was "far more likely to use the subscriber information to intimidate and harass the user into taking down the one-star review, rather than filing a lawsuit." *See In re Komanokai*, No.

---

[2] If Applicant has not demonstrated a *prima facie* claim of defamation against the account holder, the Court need not consider this step. *See Smythe v. Does*, No. 15-MC-80292-LB, 2016 WL 54125, at *4 (N.D. Cal. Jan. 5, 2016).

4:20-mc-80149-KAW, 2020 WL 6684565, at *3 (N.D. Cal. Nov. 12, 2020).

There does not appear to be any real harm to the restaurant in this case, either, and it appears more likely that the discovery will be used to chill speech. This possibility is particularly concerning because Japanese defamation law carries the possibility of criminal proceedings and incarceration. Accordingly, given the speculative nature of the harm, and the chilling effect on unmasking, the balance of harms appears to weigh in favor of the anonymous speaker.

## V.  CONCLUSION

For the foregoing reasons, Google therefore respectfully requests that the Court permits production only if the Applicant has satisfied the safeguards for unmasking the identity of an anonymous speaker.

Dated:  October 28, 2022                    **PERKINS COIE LLP**

By: *s/ Julie E. Schwartz*
Julie E. Schwartz
Michael C. Bleicher

Attorneys for Non-Party
GOOGLE LLC