Carlos Makoto Taitano, State Bar No. 275820
 makoto@taitano.us.com
MFPR Roppongi Azabudai Bldg. 11th Floor
1-8-7 Roppongi
Minato-ku, Tokyo 106-0032 Japan
Telephone:    1 671 777 0581

Attorney for Applicant
TEAM CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re Ex Parte Application of ) | Case Number: 22-mc-80183-VKD |
| ) | |
| TEAM CO., LTD., ) | **TEAM CO., LTD.'S OPPOSITION TO** |
| ) | **GOOGLE LLC'S MOTION TO QUASH** |
| Applicant. ) | **SUBPOENA** |
| ) | |
| ) | Date: December 13, 2022 |
| ) | Time: 10:00 a.m. |
| ) | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

**Page**

I.   INTRODUCTION.................................................................................................1

II.   FACTUAL BACKGROUND.............................................................................1

III.   LEGAL STANDARD..........................................................................................2

IV.   ARGUMENT.......................................................................................................3

    A.   The First Amendment does not protect speech that involves only foreign persons in a foreign country with no connections to the United States................................................................................3

        1.   TEAM, which is a Japan corporation, and the Speaker, who most likely is a foreign citizen, doe not possess First Amendment rights....................................................................3

        2.   The Speech was in Japan and was not directed to the United States....................................................................................4

        3.   The opinions of *In re Anonymous Online Speakers* and *Tokyo University of Social Welfare* are inapposite.........................6

        4.   This Court's analysis in *Zuru* is persuasive and should be followed by this Court in finding that the First Amendment does not apply to foreign speech in the context of Section 1782................................................................7

    B.   TEAM satisfied the good cause standard under Rule 26(d)......................8

    C.   Even if the First Amendment might protect what is entirely foreign speech in this Case, TEAM satisfied the *Highfields* test because TEAM made out a *prima facie* case with competent evidence, and the magnitude of the harms tilt in favor of TEAM...............9

        1.   If the First Amendment might protect what is entirely foreign speech in this Case, then the *Highfields* standard would be appropriate because the Speech is commercial speech...............................................................................10

        2.   TEAM adduced competent evidence addressing all of the inferences of fact that TEAM would need to prove in order to prevail under the law of Japan......................................11

            (a)   The Speech is an unlawful act infringing upon TEAM's reputation...................................................12

            (b)   The Speaker's unlawful act caused actual damage to TEAM's reputation.............................................15

            (c)   There is a causal relationship between the Speaker's unlawful act and TEAM's damages......................17

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

1

**Table of Contents**

2

**Page**

3    (d)  TEAM can prove the Speaker's intent or negligence..............17

4    (e)  The Speaker will fail to prove the applicable
affirmative defense.......................................................................17

5   3.  The magnitude of harms tilts in favor of TEAM.............................18

6

7   4.  The California state court opinion of *Vogel* cited by
Google is inapposite...........................................................................20

8 V.  CONCLUSION..............................................................................................21

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Table of Authorities**

2

**Page(s)**

3

**Cases**

4

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
570 U.S. 205, 133 S.Ct. 2321, 186 L.Ed.2d 398 (2013)......................................3,4,5

5

6

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
140 S.Ct. 2082, 207 L.Ed.2d 654 (2020)..........................................................4

7

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009).......................................................................13

8

9

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)............................................16

10

*Highfields Capital Mgmt. L.P. v. Doe*,
385 F. Supp. 2d 969 (N.D. Cal. 2005).........................................................9,10

11

12

*In re Anonymous Online Speakers*.
661 F.3d 1168 (9th Cir. 2011)..................................................................6,10

13

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,
--- F. Supp. 3d ---, Case No. 20-mc-80214-VC,
2022 WL 2205476, (N.D. Cal. June 21, 2022)....................................................7

14

15

*In re PGS Home Co. Ltd.*,
Case No. 19-mc-80139-JCS, 2019 WL 6311407
(N.D. Cal. Nov. 25, 2019).........................................................................6

16

17

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
634 F.3d 557 (9th Cir. 2011)......................................................................3

18

19

*In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation
dated July 23, 2020*,
337 F.R.D. 639 (N.D. Cal. 2020)..............................................................3,4,5

20

21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed. 355 (2004)...........................................3

22

*Kleindienst v. Mandel*,
408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)...........................................4

23

24

*Koch v. Goldway*,
817 F.2d 507 (9th Cir. 1987)....................................................................14

25

*Milkovich v. Lorain J. Co.*,
497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)............................................13

26

27

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995)..................................................................14,15

28

1
2

## Table of Authorities

**Page(s)**

3

**Cases**

4    *Rocci v. Ecole Secondaire Macdonald-Cartier*,
5        755 A.2d 583 (N.J. 2000)...........................................................................16,19

6    *Silverman v. Mendiburu*,
        785 F. App'x 460 (9th Cir. 2019)................................................................11

7    *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736 (9th Cir. 2021).......................................4,5

8    *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*,
9        Case No. 21-mc-80102-DMR, 2021 WL 4124216
         (N.D. Cal. Sep. 9, 2021)...............................................6,8,9,10,11,19

10   *Underwager v. Channel 9 Austl.*,
         69 F.3d 361 (9th Cir. 1995)......................................................................14
11
     *Unelko Corp. v. Rooney*,
12       912 F.2d 1049 (9th Cir. 1990)..................................................................13

13   *Vogel v. Felice*,
         127 Cal. App. 4th 1006 (2005)................................................................20
14
     *Watchtower Bible & Tract Soc'y of New York v. Village of Stratton*,
15       536 U.S. 150, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002)...........................................3

16   *W.J.A. v. D.A.*,
         43 A.3d 1148 (N.J. 2012)..........................................................................16,19
17
     *Zuru, Inc. v. Glassdoor, Inc.*,
18       Case No. 22-mc-80026-AGT, 2022 WL 2712549
         (N.D. Cal. July 11, 2022).............................................................4,6,7,9,10
19

20   **Statutes**

21   28 U.S.C. § 1782.........................................................................................8

22   **Rules**
23
     Fed. R. Civ. P. 45(d)(3)(A)(iii)..................................................................2,8
24

25   **Treatises**

26   1 Rodney A. Smolla, *Law of Defamation* § 7:7 (2d ed. 2021)................................16

27   1 Rodney A. Smolla, *Law of Defamation* § 3:30 (2d ed. 2021)..............................20

28

1

2

## Table of Authorities

Page(s)

3

**Japan Cases**

4

5

Saikō Saibansho [Sup. Ct.] September 9, 1997, hei 6 (o) no. 978,
Westlaw Japan (Japan)..............................................................................12,18

6

**Japan Statutes**

7

Keihō [Pen. C.] art. 230-2(1) (Japan)................................................................18

8

Minpō [Civ. C.] 2006, art. 709 (Japan).............................................................11

9

Minpō [Civ. C.] 2006, art. 710 (Japan).............................................................11

10

11

**Japan Treatises**

12

Atsumi Kubota, 15 *Shin-chushaku-minpo [New Commentary
on the Civil Code of Japan]* § 710 (2017)..........................................................16

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Applicant, TEAM CO., LTD. (hereinafter "**TEAM**"), applied for an Order, pursuant to Section 1782 of Title 28 of the United States Code, (hereinafter "**Application**") requesting limited discovery from Google LLC (hereinafter "**Google**") to aid foreign litigation in Japan.

TEAM is seeking to unmask an anonymous Google account holder with the display name of "*S K*" (hereinafter "**Speaker**") who published a false and a defamatory review of TEAM's restaurant (hereinafter "**Speech**") to the Google review page of TEAM.

Contrary to Google's description of the review as being an "innocuous recounting of an experience that the patron had at the restaurant and their opinions regarding their experience", the Speech contains false accusations of theft by TEAM's employees and caused, and continues to cause, actual damage to TEAM. TEAM intends to file a civil lawsuit in Japan against the Speaker for defaming the reputation of TEAM.

Contrary to Google's contention, First Amendment protections are inapplicable to the Speaker or TEAM because they are located in Japan, they are not U.S. citizens, the Speech is directed to a Japanese audience, and therefore, the Speaker, TEAM, and the Speech lack any U.S. connection. Even if the First Amendment might be applicable, TEAM satisfied the good cause standard under Rule 26(d) of the Federal Rules of Civil Procedure and the *Highfields* standards.

Therefore, TEAM respectfully requests that the Court deny Google's motion to quash the Subpoena and order Google to provide the information requested so that TEAM can identify the Speaker in order for TEAM to file a civil lawsuit in Japan.

### II.    FACTUAL BACKGROUND

TEAM is a Japanese corporation that operates a restaurant in Kita-Nagoya-shi, Aichi, Japan (hereinafter "**Restaurant**"). ECF 1-1, ¶¶ 1-4. Many customers of the Restaurant find and contact the Restaurant by searching for the Restaurant on the Google

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

search engine and read reviews and ratings of the Restaurant on the Restaurant's Google Maps business profile. ECF No. 1-1, ¶¶ 6-8.

On May 10, 2022, the Speaker published a false and a defamatory review of the Restaurant (i.e., the Speech) to the Google review page of the Restaurant. ECF No. 1-1, ¶ 9; ECF No. 1-3, ¶ 4 Ex A (translation of the Speech).

Upon learning of the Speech being posted, the Applicant conducted a thorough investigation, whereby it interviewed its employees and determined that the Speech falsely accuses TEAM's employees of stealing money. ECF No. 1-1, ¶ 10. TEAM has been damaged by the false and the defamatory review published by the Speaker. ECF No. 1-1, ¶ 11.

TEAM intends to file a civil lawsuit in Japan against the Speaker for defaming TEAM. ECF No. 1-1, ¶¶ 13-15. Under the law of Japan, the identity of the Speaker is necessary to file a civil lawsuit in Japan, but TEAM has no means of otherwise identifying the Speaker. ECF No. 1-1, ¶ 12; ECF No. 1-2, ¶ 11. Although Google contends that discovery should not be allowed because of the criminal penalties for defamation in Japan, TEAM declared that it will only be used to file a civil lawsuit in Japan. ECF No. 16, at 3:11-13, 10:3-5; ECF No. 1-1, ¶ 15.

TEAM filed the Application on July 20, 2022 in order to conduct discovery upon Google in order to identify the Speaker, because the identity of the Speaker is necessary to file a civil lawsuit in Japan. ECF No. 1-1, ¶ 13-15; ECF No. 1-2, ¶ 11.

The Court granted the Application on September 7, 2022, and TEAM served the Subpoena upon Google on September 21, 2022 pursuant to the Court's Order. ECF Nos. 14, 15. Google has moved to quash the Subpoena.

### III. LEGAL STANDARD

Rule 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure requires a court to "quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Additionally, the U.S. Supreme Court in *Intel* identified the following four factors to be considered by a court when exercising its discretion to authorize discovery pursuant to a Section 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign county or the United States; and, (4) whether the request is unduly intrusive or burdensome. *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (cleaned up) (*citing Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004)).

## IV.   ARGUMENT

Google makes primarily three arguments: (1) the First Amendment protects the Speech; (2) TEAM must demonstrate good cause to conduct discovery under Rule 26(d) of the Federal Rules of Civil Procedure; and, (3) discovery is inappropriate under the *Highfields* standards. Each argument is addressed, *infra*.

### A.   The First Amendment does not protect speech that involves only foreign persons in a foreign country with no connections to the United States.

#### 1.   TEAM, which is a Japan corporation, and the Speaker, who most likely is a foreign citizen, do not possess First Amendment rights.

The First Amendment of the United States Constitution protects the rights of individuals to speak anonymously. *Watchtower Bible & Tract Soc'y of New York v. Village of Stratton*, 536 U.S. 150, 165-67, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002). "U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. 639, 649 (N.D. Cal. 2020) (*citing Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc. ("USAID I")*, 570 U.S. 205, 133 S.Ct. 2321, 186 L.Ed.2d 398 (2013)). "While

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

under some circumstances non-citizens within a U.S. territory possess certain constitutional rights, 'it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution.'" *Id.* (*citing USAID I*, 570 U.S. 205); *Zuru, Inc. v. Glassdoor, Inc.*, Case No. 22-mc-80026-AGT, 2022 WL 2712549, at *5 (N.D. Cal. July 11, 2022) (*citing Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 140 S.Ct. 2082, 2086, 207 L.Ed.2d 654 (2020)) (same proposition). Thus, if the anonymous speaker "is a U.S. citizen or if he is a non-citizen within U.S. territory, then he may properly invoke the First Amendment; otherwise, he may not." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. at 649.

TEAM is a Japan corporation doing business in Japan and the Speaker in this Case is likely a Japanese national residing in Japan. Therefore, based upon U.S. Supreme Court precedent, the Speaker and TEAM possess no rights under the U.S. Constitution and may not invoke First Amendment protections.

### 2. The Speech was in Japan and was not directed to the United States.

The First Amendment protects speech for the sake of both the speaker and the recipient. *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021). There is a First Amendment right of domestic listeners to receive speech from foreign speakers. *Id.* at 744 (*citing Kleindienst v. Mandel*, 408 U.S. 753, 758, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)). However, where the speech at issue is "in other nations," it does not involve a right to receive information in the United States. *Id.* The speech at issue must be "directed at and received by [United States] residents". *Id.* (words in brackets added).

In this Case, TEAM is a Japan corporation doing business in Japan, the Speaker is most likely a Japanese national living in Japan (and Google has adduced no evidence to the contrary) that is a purported former customer of TEAM who dined at TEAM's Restaurant in Japan, and the Speaker wrote a defamatory review of TEAM on TEAM's Google review page in the Japanese language that is clearly directed at a Japanese

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

audience. ECF No. 1-1, ¶¶ 1-3, 9-10, Ex. 1. Therefore, the Speech was "in Japan," and there is no evidence that the Speech was "directed at and received by United States residents."

The only "connections" of TEAM and the Speaker to the United States are that TEAM maintains a Google My Business account and that the Speaker published the defamatory review on the Google review page of TEAM's Restaurant, both maintained by Google, a Delaware limited liability company. ECF No. 1, at 2:6-12; ECF No. 1-1, ¶¶ 1, 3, 7, 9; ECF No. 1-2, ¶ 5, Ex. 1; *Thunder Studios, Inc.*, 13 F. 4th at 748-50 (Lee, J., dissenting). However, the mere fact that the Speaker or that TEAM used Google's services have no effect upon the analysis, because Google operates worldwide, with its services provided in multiple languages including Japanese, and merely using Google's services could hardly be considered as directing speech at United States residents.

Although there is a possibility that a resident of the United States "may" view the Speech because it was published on the internet (which can be viewed by anyone worldwide), under *Thunder Studios, Inc.*, First Amendment protections only attach if the speech was "directed" to United States residents, which there is no indication of in this Case. *Thunder Studios, Inc.*, 13 F.4th at 744. Furthermore, allowing First Amendment protections because United States residents "may" view the Speech would be an overextension of First Amendment protections, and contrary to both Ninth Circuit and U.S. Supreme Court precedent which have consistently held that foreign persons have no First Amendment Rights. *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corporation dated July 23, 2020*, 337 F.R.D. at 649 (*citing USAID I*, 570 U.S.); *Thunder Studios, Inc.*, 13 F.4th at 744.

Because the Speaker's review was published most likely by a citizen of Japan in the Japanese language concerning a restaurant in Japan that is operated by a Japan corporation, there is nothing to indicate that the speech was directed at users in the United States or that users in the United States received the speech. Therefore, First Amendment protections should not be extended to the Speaker in this Case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3. The opinions of *In re Anonymous Online Speakers* and *Tokyo University of Social Welfare* are inapposite.

Google contends that the First Amendment protects the Speech and in support cites to *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011). ECF No. 16 at 5:16-21. *In re Anonymous Online Speakers* is inapposite because that case involved companies doing business in the United States and speech in the United States. This Case is distinguishable from *In re Anonymous Online Speakers* because TEAM is a Japan corporation doing business in Japan with no connections to the United States, the Speaker is likely a resident and a national of Japan, there is no evidence that the Speaker is a U.S. citizen, the Speaker purportedly dined at the Restaurant operated by TEAM in Japan, and the Speech is a defamatory review published in the Japanese language concerning the Restaurant that is located in Japan. Therefore, unlike the facts in *In re Anonymous Online Speakers*, neither the Speaker nor the Speech nor TEAM have any connections to the United States.

Similarly, although *Tokyo University of Social Welfare v. Twitter, Inc.* that Google cites to involved foreign parties and foreign speech, the court in that case did not analyze whether First Amendment protections should be afforded to a foreign speaker where the speech involved is made by a foreign citizen against another foreign citizen in a foreign country and not directed to or received by a United States citizen. ECF No. 16, at 5:22-27; *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, Case No. 21-mc-80102-DMR, 2021 WL 4124216 (N.D. Cal. Sep. 9, 2021); *see Zuru, Inc.*, 2022 WL 2712549, at *5 n.6 ("Some courts have applied *Highfields'* "real evidentiary basis" standard even when a § 1782(a) applicant has sought to identify an anonymous speaker who was a foreign citizen speaking outside U.S. territory. *See, e.g., Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-mc-80102-DMR, 2021 WL 4124216, at *4-5 (N.D. Cal. Sept. 9, 2021) .... These courts overlooked that the basis for applying *Highfields*, the First Amendment, wasn't implicated").

//

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**4.    This Court's analysis in *Zuru* is persuasive and should be followed by this Court in finding that the First Amendment does not apply to foreign speech in the context of Section 1782.**

This Court in *Zuru* analyzed the application of the First Amendment in the context of Section 1782 discovery being sought to identify an anonymous speaker for online defamation involving foreign speech. *Zuru, Inc.*, 2022 WL 2712549. The applicant was a company founded in New Zealand seeking discovery from Glassdoor, Inc. to file an action for defamation in New Zealand against former employees that worked for the company in New Zealand who anonymously defamed the applicant on Glassdoor.com. *Id.* at *1. Glassdoor, Inc. moved to quash the subpoena and contended that the speech was protected by the First Amendment, and that Zuru had not provided "a real evidentiary basis" as required by *Highfields*. *Id.* at *4. This Court stated that:

> "Courts use the 'real evidentiary basis' standard to protect First Amendment rights. But the speakers here, the anonymous reviewers, don't have those rights. They worked for *Zuru* in New Zealand, and there's no reason to believe they were U.S. citizens.' '[F]oreign citizens outside U.S. territory do not possess rights under the U.S. Constitution,' including under the First Amendment."

*Id.* at *5. This Court further considered the U.S. policy arguments advanced by the movant (which Google does not argue in this Case), but found those policy arguments unpersuasive, and decided that *Highfields* is not applicable because the proposed defendants have no First Amendment rights. *Id.* at *5-6.

Based upon the foregoing, First Amendment protections are inapplicable or should not be afforded to the Speaker.  Furthermore, Google lacks standing to assert that the Speaker's Speech is protected by the First Amendment, because, although Google can "assert the First Amendment rights of [its] users", First Amendment protections are inapplicable in this Case. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, --- F. Supp. 3d ---, Case No. 20-mc-80214-VC, 2022 WL 2205476, at *4 (N.D. Cal. June 21, 2022) (internet platforms can assert the First Amendment rights of "their users"). Because First Amendment protections are inapplicable in this Case, only the good cause standard under

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

Rule 26(d) of the Federal Rules of Civil Procedure, and not the *Highfields* test, are applicable in this Case.

**B.   TEAM satisfied the good cause standard under Rule 26(d).**

Google discussed the good cause standard under Rule 26(d) of the Federal Rules of Civil Procedure, but does not expressly contend that TEAM actually failed to satisfy that standard. ECF No. 16, at 6:3-12. Nevertheless, TEAM has shown that it satisfied the good cause standard.

Since discovery under Section 1782 is guided by the standards set forth in the Federal Rules of Civil Procedure, courts have applied the good cause standard that governs Rule 26(d) requests for early discovery in determining whether to allow a Section 1782 applicant to obtain information to unmask an anonymous speaker. 28 U.S.C. § 1782(a); Fed. R. Civ. P. 45(d)(3)(A)(iii); *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *3. In applying the Rule 26(d) good cause standard, courts examine four factors: whether (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Id.*

TEAM satisfies all four factors. First, TEAM specifically identified the Speaker by a website address at which the Speaker, who is a Google account holder, published the Speech. ECF No. 1-1, ¶ 9; see *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 (applicant demonstrated that the speaker is a real person or entity subject to suit by identifying the website address of the speaker's account and the date of the speech).

Second, TEAM knows of no means other than through discovery in this Case to identify the Speaker, and consulted TEAM's lawyer in Japan because it had no other known means to identify the Speaker. 2d Decl. of N. Teramatsu in Supp. of TEAM's Opp'n

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

to Google LLC's Mot. to Quash Subpoena (hereinafter "**Teramatsu 2d Decl.**") ¶ 4, Nov. 12, 2022. Furthermore, under the law of Japan, there are no legal procedural methods to identify the Speaker, and the only means by which TEAM can identify the Speaker is through the discovery in this Case. 2d Decl. of Y. Kitazawa in Supp. of TEAM's Opp'n to Google LLC's Mot. to Quash Subpoena (hereinafter "**Kitazawa 2d Decl.**") ¶ 37, Nov. 14, 2022.

Third, TEAM's lawsuit in Japan will withstand a motion to dismiss, because it has made out a *prima facie* case as discussed in Section IV.C, *infra*. Kitazawa 2d Decl. ¶¶ 6-30.

Fourth, TEAM demonstrated that there is a reasonable likelihood of being able to identify the Speaker through discovery, because the Subpoena served upon Google seeks identifying information about the Speaker's Google account. ECF No. 1, at 1:14-21, Ex. A; *see Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 (applicant satisfied the fourth requirement because the subpoena seeks identifying information for the user of the subject account). Therefore, TEAM satisfied all four factors of the good cause standard.

### C. Even if the First Amendment might protect what is entirely foreign speech in this Case, TEAM satisfied the *Highfields* test because TEAM made out a *prima facie* case with competent evidence, and the magnitude of the harms tilts in favor of TEAM.

Google contends that TEAM failed to satisfy the *Highfields* test.  ECF No. 16, at 3:21-22, 7:6-7; *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 974 (N.D. Cal. 2005). The *Highfields* standard, however is inapplicable in this Case, which involves entirely foreign speech, because the *Highfields* standard balances the rights of anonymous speakers for the purpose of the First Amendment. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *3; *Zuru, Inc.*, 2022 WL 2712549, at *5, 5 n.6. As explained in Section IV.A, *supra*, the First Amendment is inapplicable in this Case because the Speaker and TEAM are foreign persons residing or doing business in Japan and the Speech was neither directed to nor received by a U.S. audience. This Court has previously held that a merits analysis is not required in the context of Section 1782 discovery of a

1    foreign anonymous person's identity and that *Highfields'* "real evidentiary basis"

2    standard is inapplicable in the Section 1782 context. *Zuru, Inc.*, 2022 WL 2712549, at *1-2,

3    6. However, even if the First Amendment might even remotely protect what is entirely

4    foreign speech in this Case, TEAM satisfied the *Highfields* test.

5                1.    **If the First Amendment might protect what is**
                       **entirely foreign speech in this Case, then the**
6                      ***Highfields* standard would be appropriate**
                       **because the Speech is commercial speech.**

7            "If an applicant satisfies all four good cause factors, the court must then consider

8    the potential chilling effect on First Amendment rights of ordering disclosure of an

9    anonymous speaker's identity." *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *3.

10   "Courts have adopted a variety of standards to benchmark whether an anonymous

11   speaker's identity should be revealed.'" *Id.* (*citing In re Anonymous Online Speakers*, 661

12   F.3d at 1175). "In choosing the proper standard 'by which to balance the rights of

13   anonymous speakers,' the Ninth Circuit has suggested that courts focus on 'the nature of

14   the speech.'" *Id.* "A more rigorous standard may be applicable where the speech at issue

15   is political, religious, or literary, while commercial speech 'should be afforded less

16   protection.'" *Id.* The specific circumstances surrounding the speech serve to give context

17   to the balancing exercise. *Id.* In this case, the Speech criticizes and falsely accuses TEAM's

18   employees of theft, which falls into the category of commercial speech. ECF No. 1-1, ¶ 9,

19   Ex. 1; ECF No. 1-3, ¶ 4, Ex. A; *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4

20   (anonymous criticism was commercial speech). Accordingly, the test in *Highfields* would

21   be applicable under those circumstances. *Highfields Capital Mgmt. L.P.,* 385 F. Supp. 2d

22   at 975-76.

23           "Under the *Highfields* standard, the moving party 'must adduce *competent*

24   *evidence* – and the evidence [the moving party] adduces must address all of the inferences

25   of fact that [it] would need to prove in order to prevail under at least one of the causes of

26   action [it] asserts.'" *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 (citing

27   *Highfields Capital Mgmt. L.P.*, 385 F. Supp. 2d at 975-76) (alterations in original). "If the

28

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

1    moving party meets its initial burden, the court must then 'assess and compare the

2    magnitude of harms that would be caused to the competing interests by a ruling in favor

3    of' the applicant and the speaker." *Id*.

> 4      **2.**     **TEAM adduced competent evidence addressing all of the**
> 5           **inferences of fact that TEAM would need to prove in order**
>            **to prevail under the law of Japan.**

6    Under the *Highfields* standard, TEAM adduced competent evidence, and that

7    evidence addresses all of the inferences of fact that TEAM would need to prove in order

8    to prevail under at least one of the causes of action it asserts. *Id*. at *4; *Silverman v.*

9    *Mendiburu*, 785 F. App'x 460 (9th Cir. 2019) (a "declaration, signed under penalty of

10   perjury" constitutes "competent evidence" sufficient even to withstand summary

11   judgement).

12   TEAM intends to file a civil lawsuit against the Speaker for damaging its reputation

13   under Articles 709 and 710 of the Civil Code of Japan. ECF No. 1-1, ¶¶ 13-15; ECF No. 1-2,

14   ¶¶ 6-8; Kitazawa 2d Decl. ¶ 6. Articles 709 and 710 provide that:

> 15      **(Damages in Torts)**
> 16      Article 709. A person who has intentionally or negligently
>           infringed any right of others, or legally protected interest of
> 17      others, shall be liable to compensate any damages resulting as
>           a consequence.

18   Minpō [Civ. C.] 2006, art. 709 (Japan); Kitazawa 2d Decl. ¶ 7.

> 19      **(Compensation for Damages Other than Property)**
> 20      Article 710. Persons liable for damages under the provisions
>           of the preceding Article must also compensate for damages
> 21      other than those to property, regardless of whether the body,
> 22      liberty or reputation of others have been infringed, or
>           property rights of others have been infringed.

23   Minpō [Civ. C.] 2006, art. 710 (Japan) ; Kitazawa 2d Decl. ¶ 8.

24   Article 709 provides generally for tort liability and Article 710 supplements Article

25   709 by specifically providing that a tortfeasor is liable for damage other than to tangible

26   property, such as for reputational torts and emotional distress. Kitazawa 2d Decl. ¶ 9.

27   The elements of a reputational tort under Articles 709 and 710 of the Civil Code of

28   Japan are: (a) an unlawful act infringing a person's reputation; (b) damages; (c) a causal

relationship between the unlawful act and the damages; and (d) intent or negligence. Kitazawa 2d Decl. ¶ 10. TEAM satisfied all of the elements of a reputational tort.

### (a) The Speech is an unlawful act infringing upon TEAM's reputation.

Under the law of Japan, where a statement by a person lowers another person's public reputation, the statement is an unlawful act if (i) the statement is making a factual assertion but is untrue or (ii) the statement is an opinion but is based upon untrue facts. Kitazawa 2d Decl. ¶ 11; 2d Decl. of Y. Katsurada in Supp. of TEAM's Opp'n to Google LLC's Mot. to Quash Subpoena ("**Katsurada 2d Decl.**") ¶ 4, Ex. A, Nov. 14, 2022; Saikō Saibansho [Sup. Ct.] September 9, 1997, hei 6 (o) no. 978, Westlaw Japan [WLJP], 6 (Japan) (an unlawful act can either be an assertion of a fact or an expression of an opinion).

Under the law of Japan, whether a statement lowers a person's public reputation is judged "based upon how an average reader with ordinary attention would ordinarily read" the statement. Kitazawa 2d Decl. ¶ 12; Saikō Saibansho [Sup. Ct.] September 9, 1997, hei 6 (o) no. 978, WLJP, 6 (Japan); Katsurada 2d Decl. ¶ 4, Ex. A.

Under the law of Japan, where a statement "can be understood to be asserting [a particular matter about another person for which the existence or non-existence can be determined using evidence, etc.] either directly or in a roundabout way by adopting the form of speculation, etc., it is appropriate to understand such assertion to be making a factual assertion. Kitazawa 2d Decl. ¶ 13; Saikō Saibansho [Sup. Ct.] September 9, 1997, hei 6 (o) no. 978, WLJP, 7 (Japan); Katsurada 2d Decl. ¶ 4, Ex. A.

The Speech at issue is:

> When I went last time, a customer at around 12:45 on May 2 dropped 140,000 yen and couldn't get the matter resolved by phone afterwards, so I wouldn't go here! Maybe it was a customer or someone working at this restaurant? It might have been better to call the police!

ECF No. 1-3, ¶ 4 Ex. A (English translation of Speech).

The relevant assertion in the Speech is: "Maybe it was ... someone working at this restaurant [that stole the money]?" (hereinafter "**Factual Assertion**"). Kitazawa 2d Decl. ¶ 14. Although the Speech states: "Maybe it was a customer or someone working at this restaurant [that stole the money]?", a Japanese fact finder will understand this statement

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

as making two separate assertions, one assertion being "Maybe it was a customer ... at this restaurant [that stole the money]?" and the other assertion being the Factual Assertion, and therefore, the two assertions can each be separately analyzed. *Id.* ¶ 15.

Although the Factual Assertion is in the form of speculation, it is a factual assertion under the law of Japan because it asserts that employees of TEAM stole the money, and whether or not employees of TEAM stole the money can be determined by evidence. *Id.* ¶ 16.

The Factual Assertion is untrue, because as part of the internal investigation conducted by TEAM, in which TEAM interviewed all of the employees at the Restaurant, no employee had any knowledge of what was being alleged in the review. Teramatsu 2d Decl. ¶¶ 6-7. Based upon the investigation, TEAM concluded that the Factual Assertion was false. Teramatsu 2d Decl. ¶ 7. Therefore, the Factual Assertion is an unlawful act. Teramatsu 2d Decl. ¶ 7; Kitazawa 2d Decl. ¶¶ 17, 35 (hearsay rule does not apply in civil cases in Japan).

The Factual Assertion will lower TEAM's public reputation because an average reader with ordinary attention will ordinarily read the Factual Assertion and understand it as accusing employees of TEAM of committing a crime. Teramatsu 2d Decl. ¶¶ 5, 8, 10; Kitazawa 2d Decl. ¶ 18. Therefore, TEAM satisfies the first element of a reputational tort under the law of Japan. Kitazawa 2d Decl. ¶ 19.

In addition, to survive First Amendment scrutiny, the challenged speech must be a statement of fact, and therefore, the threshold question in every defamation suit is "whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990) (alterations and internal quotation marks omitted). If the answer is no, then the claim is foreclosed by the First Amendment. *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009). Google contends that the Speech is an "innocuous recounting of an experience that the patron had at the restaurant and their opinions regarding their experience." ECF No. 16, at 3:7-9. As the U.S. Supreme Court has admonished, there is no "wholesale defamation exemption for anything that might be labeled 'opinion,'" because "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

The Ninth Circuit applies a three-factor, totality of the circumstances test in resolving this question: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

The context of a statement may control whether words were understood in a defamatory sense. *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987). The broad context "includes 'the general tenor of the entire work, the subject of the statements, the setting, and the format of the work.'" *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995). When the surrounding circumstances of a statement are those of a heated political debate, where certain remarks are necessarily understood as ridicule or vituperation, ... the statement cannot reasonably be taken as anything but opinion. *Koch*, 817 F.2d at 509.

In this Case, the Speech is a review of the Restaurant on the Google review page of the Restaurant, **1**/ where information about the Restaurant is expected to be given**2**/.

TEAM'S Google review page is not an innocuous online billboard or chat room, and there is no heated debate or assumption that what is written on the review would be that of the opinion of the Speaker. There is no figurative or hyperbolic language used, and there is no general tenor of the review that negates the impression that the defendant was asserting an objective fact, and the "statement at issue, which is the Factual Assertion, is susceptible of being proved true or false.

In fact, a customer of the Restaurant read the Speech, and, believing that it was an objective fact, expressed that customer's concern to TEAM about what was written in the

---

1/https://blog.google/products/maps/how-google-maps-reviews-work/ (reviews on Google are a treasure trove of local knowledge that can point you to the places and businesses you'll enjoy most).

2/https://support.google.com/maps/answer/6230175?hl=en&co=GENIE.Platform%3DDesktop#:~:text=On%20Google%20Maps%2C%20you%20can,add%20reviews%20to%20Google%20Maps (reviews "help others *choose or make a better decision*).

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

1  review. Teramatsu 2d Decl. ¶ 5. TEAM's Employees, company-wide, also have become
2  exceedingly concerned about what is stated in the Speech, showing that an ordinary
3  viewer of the Speech has understood the Speech as expressing an objective fact that the
4  employees of the Restaurant stole money from a customer. *Id.* ¶ 8.

5      Furthermore, the stated fact that the Restaurant's employees stole the money is a
6  statement susceptible of being proved as true or false. *Partington*, 56 F.3d at 1153. Either
7  the employees of the Restaurant stole money or they did not. TEAM has conducted an
8  extensive investigation into this matter and it questioned all of its employees at the
9  Restaurant. Teramatsu 2d Decl. ¶¶ 6-7. TEAM has concluded that the allegation that its
10 employees stole money from the purported customer is false. *Id.* ¶ 7. The Speaker has
11 failed to adduce any evidence that would support the allegation that the employees of the
12 Restaurant stole money. Therefore, in applying the *Partington* factors, the Speech that
13 the employees of the Restaurant stole money is an actionable, false, and defamatory
14 statement, for which no First Amendment protection should be afforded.

15              **(b)    The Speaker's unlawful act caused**
16                      **actual damage to TEAM's reputation.**

17      TEAM has been damaged because the Factual Assertion has been understood as a
18 fact by customers and employees of TEAM, whereby customers have expressed concern
19 about the Factual Assertion and the Factual Assertion has caused distrust and suspicion,
20 and has lowered the morale, among TEAM's employees, degrading the working
21 environment within TEAM. Teramatsu 2d Decl. ¶¶ 5, 8. TEAM has attempted,
22 unsuccessfully, to stop the damage being caused to TEAM. *Id.* ¶ 8. The Factual Assertion
23 has cast TEAM, its employees, and its brand in a negative light. *Id.* ¶ 9. A Google user has
24 placed a "thumbs up" to the Speech, showing that at least one person felt that the review
25 was helpful to her or him, and that customer has likely made a decision to not dine at the
26 Restaurant. *Id.* ¶ 10. Based upon how frequently Google reviews are read by potential
27 customers, hundreds of Google users searching for restaurants in the area have likely seen
28 the review, affecting their decision to dine at the Restaurant, and their perception of
   TEAM and its employees. *Id.* ¶ 10. The Speech has required TEAM to investigate the

matter, taking its employees away from their ordinary work. *Id.* ¶ 11. Because TEAM has no means to identify the Speaker and to protect its reputation, it has become necessary for TEAM to seek discovery in this Case. *Id.* ¶ 11. Due to the nature of online defamation and because TEAM markets through various channel, although it is impossible to measure the monetary effect of the Speech, the Speech is causing real harm to TEAM. *Id.* ¶ 12; Kitazawa 2d Decl. ¶ 20, Ex. 2; Katsurada 2d Decl. ¶ 4, Ex. B; Atsumi Kubota, 15 *Shin-chushaku-minpo [New Commentary on the Civil Code of Japan]* § 710 at 868, 875 (2017).

Under the United States Constitution, for TEAM to survive Constitutional muster, it must at least show actual damage. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-50, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). "[A]ctual damage is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 350. "There need be no evidence which assigns an actual dollar value to the injury." *Id.* Therefore, TEAM has shown at least impairment of reputation and damage to its operations, which is actual damage. Teramatsu 2d Decl. ¶¶ 5, 8-12; *Gertz*, 418 U.S. at 349-50; *see* 1 Rodney A. Smolla, *Law of Defamation* § 7:7 (2d ed. 2021) ("No Supreme Court opinion has ever required special harm in any defamation case. When special harm is mandated in a case it is purely a requirement of state law.").

Even where the foregoing damage is not proven, where a Judge in a civil case in Japan determines in light of common sense that a statement lowers a plaintiff's reputation, the Judge will award damages to compensate for the intangible lowering of the plaintiff's reputation. Kitazawa 2d Decl. ¶¶ 20-21, 36, Ex. 2 (lowering of one's reputation is considered actual damage under law of Japan); Katsurada 2d Decl. ¶ 4, Ex. B; Atsumi Kubota, 15, *supra*, § 710 at 868, 875 (2017). The lowering of a plaintiff's reputation is allowed as actual damages in the United States as well, whereby the Supreme Court of New Jersey has stated "[o]ther damages include the loss of one's good name inflicted by the defamatory publication to third parties, and the anguish and humiliation that flows from a communication that, history and experience teach, will dimmish one's good name." *W.J.A. v. D.A.*, 43 A.3d 1148 (N.J. 2012) (*citing Rocci v. Ecole Secondaire Macdonald-Cartier*, 755 A.2d 583 (N.J. 2000) (*quoting Gertz*, 418 U.S. at 350).

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Therefore, TEAM satisfies the second element of a reputational tort under the law of Japan because it has shown damage, and TEAM further will survive United States Constitutional muster because it has shown actual damage. Kitazawa 2d Decl. ¶ 22.

### (c)  There is a causal relationship between the Speaker's unlawful act and TEAM's damages.

Civil courts in Japan do not require any special proof of a causal relationship between the unlawful act and the damages. *Id.* ¶ 23. Nevertheless, the damages as explained in Section IV.C.2(b), *supra*, directly resulted from the Factual Assertion. Teramatsu 2d Decl. ¶¶ 5, 8-12; Kitazawa 2d Decl. ¶¶ 18-19, 23. Therefore, TEAM satisfies the third element of a reputational tort under the law of Japan. Kitazawa 2d Decl. ¶ 24.

### (d)  TEAM can prove the Speaker's intent or negligence.

Intent or negligence is rarely an issue in cases involving online reputational torts, because the relevant intent or negligence is whether the Speaker intentionally or negligently published the Speech. *Id.* ¶ 25. Because the Speech would not have been published without intent or negligence in cases involving online reputational torts, whereby the Speaker would have typed his statement into his electronic device and clicked his cursor to send the statement as a review, the fact that the Speech was published is ordinarily sufficient proof of intent or negligence. *Id.* ¶ 25. Therefore, TEAM satisfies the fourth element of a reputational tort under the law of Japan. *Id.* ¶ 26.

Based upon the foregoing, the civil lawsuit that will be filed by TEAM, upon discovering the true identity of the Speaker, will withstand a motion to dismiss in a civil court of Japan; TEAM will be able to make out a *prima facie* case under Articles 709 and 710; TEAM has adduced competent evidence; and, the evidence adduced addresses all of the inferences of fact that TEAM would need to prove in order to prevail under Articles 709 and 710. *Id.* ¶ 27.

### (e)  The Speaker will fail to prove the applicable affirmative defense.

A defendant in a civil case in Japan can avoid liability by raising and proving the affirmative defense, provided for in Article 230-2(1) of the Penal Code of Japan, which is applied *mutatis mutandis* in civil reputational tort cases. Kitazawa 2d Decl. ¶ 28;

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

Katsurada 2d Decl. ¶ 4, Ex. A; Saikō Saibansho [Sup. Ct.] September 9, 1997, hei 6 (o) no. 978, WLJP, 6 (Japan).

Article 230-2(1) of the Penal Code provides that:

**(Special Provision for Matters Concerning Public Interest)**

> Article 230-2 (1) When an act prescribed under paragraph (1) of the preceding Article is found to relate to matters of public interest and to have been conducted solely for the benefit of the public, the truth or falsity of the alleged facts are to be examined, and punishment is not imposed if they are proven to be true.

Keihō [Pen. C.] art. 230-2(1) (Japan); Kitazawa 2d Decl. ¶ 29.

The elements of the affirmative defense under Article 230-2(1) of the Penal Code are: the factual assertion is (1) of public interest; (2) solely for the benefit of the public; and (3) true. Kitazawa 2d Decl. ¶ 30. Where the defendant can prove all of the foregoing elements, the factual assertion is considered not unlawful. *Id.*

That foregoing-described affirmative defense is required to be raised and proven by the defendant, and, therefore, TEAM, as a plaintiff, would not be required to prove it. *Id.* ¶ 31. The Speaker will fail to prove, at least, the second and third elements of that affirmative defense. *Id.*

The Speaker will fail to prove the second element because the Factual Assertion will not be considered to be solely for the benefit of the public for the reason that the Factual Assertion accuses, without any objective basis, TEAM or its employees of committing a crime. *Id.* ¶ 32.

The Speaker will fail to prove the third element because the Factual Assertion that TEAM or its employees stole money from a customer is untrue as more fully explained in Section IV.C.2(a), *supra*. Teramatsu 2d Decl. ¶ 7; Kitazawa 2d Decl. ¶ 33.

Based upon the foregoing, the Speaker will fail to prove the applicable affirmative defense, and therefore, the Factual Assertion will be considered unlawful. Kitazawa ¶ 34.

### 3.    The magnitude of harms tilts in favor of TEAM.

If TEAM meets its initial burden, the court must then assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in

favor of TEAM or in favor of the Speaker. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4.

Online defamation is a significant issue in Japan in which some victims have even committed suicide. [3]/ According to a survey conducted by the websites of reviewtrackers and Reputation X, in the United States, 63.6% of consumers check Google reviews before visiting a business location, [4]/ 88% of consumers put as much trust in online reviews as they do in personal recommendations, [5]/ and 86% of consumers will hesitate to purchase from a business that has a negative review. [6]/

Based upon those statistics, although businesses will be unable to actually prove that they were damaged, because consumers simply read the reviews and make their decisions, the effects of a false and a defamatory review to a business is real and significant.

Google review pages are intended for potential customers to find information about local establishments. A negative review, "could just be what saves others their valuable time and money on something you believe won't offer them the value they're looking for".[7]/

Unless TEAM is allowed to clear its name in court, TEAM will continue to be damaged and its name plagued by the false Factual Assertion. That defamation is a "dignitary tort," *Rocci*, 755 A.2d at 592 (O'Hern, J., dissenting), is not a matter of dispute. *W.J.A.*, 43 A.3d at 1159. Therefore, this Court should allow TEAM the discovery to identify the Speaker in order to file a civil lawsuit in Japan for the loss of its good name inflicted by the defamatory publication in addition for the actual damage caused to TEAM, as

---

[3]/ https://www.nippon.com/en/news/yjj2022070600869/.
[4]/ https://www.reviewtrackers.com/reports/online-reviews-survey/.

[5]/ https://blog.reputationx.com/impact-negative-reviews#:~:text=Every%20time%20a%20negative%20review,and%2C%20of%20course%2C%20revenue.

[6]/ https://blog.reputationx.com/impact-negative-reviews#:~:text=Every%20time%20a%20negative%20review,and%2C%20of%20course%2C%20revenue.

[7]/ https://www.businessinsider.com/guides/tech/google-reviews

Opposition to Google LLC's Motion to Quash Subpoena | 22-mc-80183-VKD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

explained *supra*.    Thus, because the harm being caused to TEAM is real and significant, and the Speaker's Factual Assertion is plainly false, the harms tilt in favor of TEAM.

**4.    The California state court opinion
of *Vogel* cited by Google is inapposite.**

The California state court opinion of *Vogel v. Felice*, 127 Cal. App. 4th 1006 (2005) that was cited by Google is inapposite because California's defamation law applies some kind of the "actual malice" standard in defamation cases that, under federal discrimination law, is applied to public figures, and is, therefore, inapplicable in this Case. ECF No. 16, at 8:9-10; *see* 1 Smolla, *supra,* § 3:30 n.7 (the law in California is ambiguous, whereby at least one court has required the plaintiff to show actual malice).

Furthermore, Google's citation to California state law for the proposition that TEAM failed to address the Speech's core complaint that a customer lost money at the Restaurant leaves "open the possibility that ... the challenged statement remains substantially true" is based upon California law that has no bearing on the issues in this Case. ECF No. 16, at 8:7-10. Even if California law could apply, the Factual Assertion is the challenged statement, which is false. All of the other statements simply give context to the Factual Assertion.

//

//

//

//

//

//

//

//

//

//

//

//

1

## V.    CONCLUSION

Based upon the foregoing, the Speech is not protected by the First Amendment, and TEAM satisfied the four-part good cause standard. Even if the foreign speech is protected by the First Amendment, TEAM has satisfied the two-prong *Highfields* test. Therefore, Google's motion to quash the Subpoena should be denied, and Google should be ordered to provide the requested discovery.

TEAM also asks that this Court specifically order Google to disclose access log from the dates provided in the Subpoena until the date that Google actually discloses the information to TEAM, because Google routinely provides access log only as of the date that the Subpoena is served, regardless of what the subpoena may state. Because of the lapse of time since the Subpoena was served upon Google, if Google provides only access log as of the date that the Subpoena was served, then access log will be useless in identifying the Speaker, as explained by TEAM's Japanese counsel. ECF No. 1-2, ¶¶ 11, 17-21.

Dated: November 14, 2022.

_____/s/   Carlos Makoto Taitano_____
CARLOS MAKOTO TAITANO
Attorney for Applicant
TEAM CO., LTD.