UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF TEAM CO., LTD., <br><br> Applicant. | Case No. 22-mc-80183-VKD <br><br> **ORDER DENYING MOTION TO QUASH SUBPOENA** <br><br> Re: Dkt. No. 16 |

On September 7, 2022, the Court granted, with modifications, applicant Team Co., Ltd.'s ("Team Co.") *ex parte* application for an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for documents on respondent Google LLC ("Google"). Dkt. No. 14. Google moves to quash the subpoena. Dkt. No. 16.

The Court held a combined hearing on Google's motion and similar motions to quash filed by Google and Twitter in *In re Ex Parte Application of Takada* (No. 22-mc-80221) and *In re Ex Parte Application of Takagi* (No. 22-mc-80240). Having considered the parties' submissions, as well as oral argument, the Court denies Google's motion to quash.[1]

**I.     BACKGROUND**

Team Co. is a Japanese corporation that operates a restaurant in Aichi, Japan. Dkt. No. 1 at 1. On May 10, 2022, a person using a Google account with the display name "SK" posted a review of the restaurant with a one-star rating on the restaurant's Google Map review page. *Id.* at 2. The text of the review (as translated in Team Co.'s application) states: "When I went last time,

---

[1] Team Co. and Google have consented to magistrate judge jurisdiction. Dkt. Nos. 7, 10

a customer at around 12:45 on May 2 dropped 140,000 yen and couldn't get the matter resolved by phone afterwards, so I wouldn't go here!  Maybe it was a customer or someone working at this restaurant?  It might have been better to call the police!" Dkt. No. 1-3, Ex. A.

In its application, Team Co. asserted that the review includes false statements accusing restaurant employees of stealing a customer's money and refusing to return it.  Dkt. No. 1 at 3; Dkt. No. 1-1 ¶ 10.  It explained that the review has damaged the restaurant's reputation and has negatively impacted its business.  Dkt. No. 1-1 ¶ 11.  Team Co. stated that it intends to file a lawsuit in Japan asserting claims for violations of Articles 709 and 710 of the Japanese Civil Code once it ascertains the true identity of SK.  Dkt. No. 1 at 3; Dkt. No. 1-2 ¶¶ 6-9.

Team Co. applied for permission to serve a subpoena on Google to obtain documents that would allow it to identify SK.  Dkt. No. 1, Ex. A at ECF 14-15.  The Court granted the application, with modifications, but required Google to give notice to the account holder before complying with the subpoena.  Dkt. No. 14 at 8-9.  In addition, the Court authorized Google or "any person whose identifying information is sought" to file a motion to quash or other motion contesting the subpoena.  *Id.* at 9.

Google now moves to quash the subpoena.  Dkt. No. 16.  Team Co. opposes the motion. Dkt. No. 17.

## II. LEGAL STANDARD

Rule 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Pursuant to 28 U.S.C. § 1782, a district court may order the production of documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege.  28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004).  The statute may be invoked where: (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *Intel*, 542 U.S. at 246.

A district court is not required to grant an application that meets the statutory criteria, but instead retains discretion to determine what discovery, if any, should be permitted. *Id.* at 264. In exercising that discretion, the court considers several factors:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the discovery requested is "unduly intrusive or burdensome."

*Id.* at 264-65.

### III.   DISCUSSION

Google does not dispute that Team Co.'s application meets the statutory requirements of 28 U.S.C. § 1782(a). Nor does it contend that compliance with the subpoena requires Google to undertake unduly burdensome or costly efforts to search for and produce the documents requested.[2] Rather, Google moves to quash the subpoena on the ground that because the discovery requested implicates the First Amendment rights of an anonymous speaker, without adequate justification and evidentiary support, the subpoena is "unduly intrusive and burdensome" under the fourth *Intel* factor. Dkt. No. 16 at 2. Team Co. opposes the motion to quash on the ground that the First Amendment does not apply to the speech in question, and even if it did, Team Co. has demonstrated good cause for the discovery it seeks. Dkt. No. 17 at 1. In its reply brief, Google raises an additional argument that the subpoena "conceals an attempt to circumvent" a U.S. policy favoring freedom of speech under the third *Intel* factor. Dkt. No. 18 at 7.

---

[2] In a footnote at the end its reply brief, Google complains that Team Co.'s document requests are "overbroad." This belated objection is too little, too late. *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived.").

### A. Whether the First Amendment Applies to Team Co.'s Application

Google argues that anonymous online speech is protected by the First Amendment to the U.S. Constitution, and that "[t]his protection applies in the context of Section 1782 applications when a foreign civil litigant, such as Applicant, seeks discovery in the United States with the assistance of United States courts." Dkt. No. 15 at 5. Google argues that the Court may not authorize discovery to ascertain the identity of SK unless Team Co. first satisfies the requirements of the *Highfields* test. *Id.* at 6 (referring to *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005)). Team Co. responds that the First Amendment does not protect the speech of a non-U.S. citizen located in Japan whose speech is not directed at a U.S. audience. Dkt. No. 17 at 1, 5.

U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights. *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.* ("*USAID I*"), 570 U.S. 205 (2013). Moreover, absent national security concerns, the First Amendment protects the right to receive information in the United States from outside U.S. territory. *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743-44 (9th Cir. 2021), *cert. denied sub nom. David v. Kazal*, 142 S. Ct. 1674 (2022). However, while non-citizens within a U.S. territory may possess certain constitutional rights, "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.* ("*USAID II*"), 140 S. Ct. 2082, 2086 (2020) (holding that foreign corporations do not possess First Amendment rights, even if affiliated with U.S. entities).

Google cites no contrary authority. Instead, it relies exclusively on cases that assume, without discussion or analysis, that the First Amendment applies. *See* Dkt. No. 16 at 5-7 (citing *Tokyo Univ. of Social Welfare* and *In re ex parte application for Himeka Kaminaguchi*); *see also* Dkt. No. 18 at 3 (citing additional district court cases in reply). Indeed, in its motion to quash, Google entirely ignores the only case directly on point in this District: Judge Tse's decision in *Zuru, Inc. v. Glassdoor, Inc.*, --- F. Supp. 3d ----, No. 22-MC-80026-AGT, 2022 WL 2712549 (N.D. Cal. July 11, 2022). *Zuru* expressly considered and rejected the proposition that the Court must apply First Amendment scrutiny to an application for discovery under 28 U.S.C. § 1782

4

where the discovery is sought in aid of a foreign defamation action against anonymous posters of reviews critical of a foreign company:

> Courts use the "real evidentiary basis" standard [of *Highfields*] to protect First Amendment rights. But the speakers here, the anonymous reviewers, don't have those rights. They worked for Zuru in New Zealand, and there's no reason to believe they were U.S. citizens. "[F]oreign citizens outside U.S. territory do not possess rights under the U.S. Constitution," including under the First Amendment.

*Zuru*, 2022 WL 2712549, at *5 (quoting *USAID II*, 140 S. Ct. at 2086). In its reply, Google calls *Zuru* an "outlier" and suggests that the Court nevertheless should rely on the cases that merely assume the First Amendment applies. *See* Dkt. No. 18 at 1, 4.

      Here, as in *Zuru*, there is no reason to believe that SK, the anonymous poster, is a U.S. citizen. SK's review was written in Japanese and directed at a Japanese business, and while the review may be accessible to anyone with an Internet connection, including U.S. citizens, the review was not directed at the United States or anyone residing in U.S. territory. *Cf. Lamont v. Postmaster General,* 381 U.S. 301, 306 (1965) (holding unconstitutional a federal statute ordering seizure of "communist political propaganda" that was "printed or otherwise prepared in a foreign country" and sent to the United States). Google cites no authority for the expansive proposition that anonymous speech implicates First Amendment protections if that speech is merely *accessible* to U.S. citizens over the Internet.

      Google observes that Team Co. has not demonstrated definitively that the anonymous speaker is *not* a U.S. citizen. *See* Dkt. No. 18 at 3. In these circumstances, Google suggests that the Court take a "protective approach" and assume that the anonymous speaker enjoys First Amendment protection. *See id.* at 4. The Court declines this suggestion for two principal reasons. First, Google is the party moving to quash and has access to information Team Co. does not have, including a means to communicate with account holder SK. Even if Google also does not have definitive information about SK's citizenship, it likely is in a better position than Team Co. to identify facts relevant to the question of citizenship. Having examined its own records and given notice to SK, as the Court ordered, Google has identified no information suggesting that SK might be a U.S. citizen or otherwise entitled to First Amendment protection. During the hearing, Google

5

advised the Court that the anonymous speaker has not indicated to Google that he or she objects to disclosure of the information Team Co. requests, and no such objection has been filed with the Court.

Second, as the Supreme Court emphasized in *Intel*, "[s]ection 1782 is a provision for assistance to tribunals abroad." *Intel*, 542 U.S. at 263.  It does not require an applicant to show "that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id.*  Google's objection to Team Co.'s subpoena reflects a deep skepticism about the merits of Japanese defamation law and about the operation of the Japanese legal system.  *See, e.g.,* Dkt. No. 16 at 3 (citing the "severity of Japan's defamation law" in urging the Court to consider whether the account holder should be "unmasked").[3]  The Court agrees with Judge Tse's observations in *Zuru* that "[o]ur country's commitment to free speech isn't universally shared; and even in other countries that protect free speech, a different balance is often struck between the right to free speech and the right to protect one's reputation, with the latter right usually receiving more weight." *Zuru*, 2022 WL 2712549, at *5.  Simply assuming First Amendment protection applies, in the absence of any facts or circumstances suggesting that it does, is inconsistent with *Intel*'s caution against evaluating an anticipated foreign proceeding through the lens of the nearest domestic analog.

While the Court certainly has discretion to consider "the nature of the foreign tribunal" and "the character of the proceedings," *see Intel*, 542 U.S. at 246 (second factor),[4] the Court is not persuaded that Team Co.'s subpoena implicates the First Amendment to the U.S. Constitution, or

---

[3] In support of its claim about the "severity" of Japanese defamation law, Google relies on a citation to the Japanese *criminal* code and a related news broadcast. *See* Dkt. No. 16 at 3 n.1.  However, Team Co. seeks discovery in aid of a *civil* action for defamation.

[4] Google does not suggest that either its compliance with the subpoena or Team Co.'s proposed Japanese defamation action will lead to a violation of fundamental human rights. *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 572 (9th Cir. 2011) ("We can conceive of situations in which the Constitution might require the district court to deny a request for assistance.  For example, if credible evidence demonstrated that compliance with a subpoena would lead to an egregious violation of human rights, such as torture, then the Constitution may require the courts to deny assistance.").

6

that the subpoena will impose an undue burden on Google or the anonymous speaker unless Team Co. first makes a prima facie showing of defamation under Japanese law, supported by evidence, under the *Highfields* test.

### B. Whether Team Co.'s Application Must Meet an Alternative Standard of "Good Cause" or "Plausibility"

Google notes that some courts require applicants seeking discovery before a foreign proceeding is initiated to meet the "good cause" standard that applies to requests for early discovery under the Federal Rules of Civil Procedure. Dkt. No. 16 at 6. The "good cause" standard requires consideration of whether the applicant: (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information. *See, e.g., Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021); *In re Frontier Co., Ltd.*, No. 19-MC-80184-LB, 2019 WL 3345348, at *3 (N.D. Cal. July 25, 2019); *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *4 (N.D. Cal. Nov. 15, 2013); *see also Columbia Ins. Co. v. seescandy.com,* 185 F.R.D. 573, 577 (N.D. Cal. 1999) ("As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."). This approach appears to be based on a view that "discovery under section 1782 is guided by the standards set forth in the Federal Rules of Civil Procedure." *Tokyo Univ.*, 2021 WL 4124216, at *3.

The proposition that applicants for discovery pursuant to 28 U.S.C. § 1782 are, or should be, required to show "good cause" for that discovery does not have clear support in the language of the statute itself. Section 1782 provides in relevant part:

> The order [authorizing discovery] may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To

> the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). In *Intel*, the Supreme Court described this "practice and procedure" part of the statute as a "mode-of-proof-taking instruction" that "imposes no substantive limitation on the discovery to be had." *Intel*, 542 U.S. at 260 n.11.[5] For this reason, the Court questions whether it is appropriate to *require* Team Co. to meet the "good cause" standard Google describes as a precondition for discovery.

Alternatively, Google argues in its reply brief that Team Co.'s proposed defamation action does not meet the "plausibility standard set forth in *Zuru*," and the subpoena should be quashed on this basis. Google's arguments about a "plausibility" standard are not well-developed, and it is not entirely clear what standard Google would have the Court apply. The *Iqbal/Twombly* "plausibility" standard for domestic pleadings requires factual allegations that permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nothing in the text of 28 U.S.C. § 1782 suggests that Congress contemplated that district courts would apply this type of "plausibility" test to the foreign claim before authorizing discovery. Indeed, undertaking an *Iqbal/Twombly*-type "plausibility" review would be difficult to do where, as here, the foreign proceeding is anticipated but no complaint has been filed, or where the case-initiating documents in the foreign proceeding do not require the same kind of supporting factual allegations. *See Intel*, 542 U.S. at 259 (adjudicative proceedings need not be pending or imminent, so long as they are within reasonable contemplation; discovery may be obtained for use in pre-complaint investigations).

In *Zuru*, Judge Tse did not require Zuru to support each element of its defamation claim with competent evidence, but instead "considered Zuru's allegations and concluded that they could support a defamation claim in New Zealand." *Zuru*, 2022 WL 2712549, at *2-3, *6; *see also id.*, at *2 ("Putting aside whether Zuru will be able to prove these four elements [of

---

[5] However, elsewhere, the Court suggested that "the controls on discovery" available to the district court, such as in Rules 26(b) and (c), could be employed to prevent improper discovery of trade secrets and other confidential information. *Intel,* 542 at 266.

defamation] at trial, it is clear that the company plausibly can plead them."). *Zuru* acknowledged that "a merits review isn't required" but that "[a] peek at the merits" was appropriate in that particular case. *Zuru*, 2022 WL 2712549, at *2. In peeking at the merits, Judge Tse undertook a substantive review of Zuru's anticipated civil action: the court examined the elements of Zuru's claim for defamation under New Zealand law, considered Zuru's supporting declarations, and assessed Glassdoor's counter-arguments before concluding that Zuru could support a plausible claim for defamation under New Zealand law. *Id.* at *2-*3.

While nothing prevents the Court from considering whether a section 1782 application describes a plausible claim for relief, such that the claim might withstand a motion to dismiss under Rule 12(b)(6) and *Iqbal/Twombly* if it were filed as a domestic action, or otherwise reflects "good cause" for discovery, the Court is reluctant to endorse a standard for exercising discretion that does not derive from the statute itself (or the Supreme Court's interpretation of it) and that seems ill-suited to an application for discovery in aid of a foreign proceeding that is within reasonable contemplation but not yet filed. However, at a minimum, a district court can require an applicant to describe the legal and factual bases for a contemplated foreign legal proceeding, and to explain how the discovery the applicant seeks will aid prosecution of that proceeding.

Here, Team Co. exceeds that minimum standard. It has described a plausible claim against SK under Japanese law and has shown good cause for discovery.[6] Team Co. intends to file a civil action for defamation, or damage to its reputation, under Articles 709 and 710 of the Civil Code of Japan. Dkt. No. 17 at 11. Article 709 provides for general tort liability, including liability for reputational torts, and Article 710 provides that damages may encompass compensable loss for interests other than damage to property. *Id.* According to the declaration of Yoshiaki Kitazawa, the Japanese lawyer representing Team Co. in Japan, the elements of a reputational tort in Japan are: (1) an unlawful act infringing a person's reputation; (2) damages; (3) a causal relationship between the unlawful act and the damages; and (4) intent or negligence. *Id.* at 11-12 (citing Dkt.

---

[6] Google does not dispute that Team Co. identified SK with sufficient specificity, explained why it requires discovery from Google to locate and identify SK, and demonstrated that Google likely has the identifying information Team Co. needs.

No. 17-2 (Kitazawa decl.) ¶¶ 7-13). A statement is an unlawful act if the statement lowers a person's public reputation based on how an average reader would ordinarily understand the statement, and the statement is either a false assertion of fact or an opinion based on untrue facts. *Id.* at 12.

The anonymous statement in question is: "When I went last time, a customer at around 12:45 on May 2 dropped 140,000 yen and couldn't get the matter resolved by phone afterwards, so I wouldn't go here! Maybe it was a customer or someone working at this restaurant? It might have been better to call the police!" Dkt. No. 1-3, Ex. A. According to Team Co., the statement suggests that: restaurant employees kept money they knew belonged to a restaurant customer, the customer could not resolve the matter informally with the restaurant, the matter should be referred to the police, and others should not patronize the restaurant. Team Co. relies on the declaration of Naoko Teramatsu, the Representative Director of Team Co., who attests that she conducted an investigation and identified no basis for the factual assertions in the review, which she contends are false. Dkt. No. 17-1 (Teramatsu decl.) ¶¶ 5-7. Ms. Teramatsu also attests to the nature of the harm Team Co. has suffered or expects to suffer as a result of the anonymous statement. *Id.* ¶¶ 5, 8-12. Team Co.'s Japanese counsel attests that, in his opinion, the statement is actionable under Japanese law, which he discusses at length, and that Team Co. will be able to satisfy the other elements of a reputational tort. *Id.* ¶¶ 11-26.

In its motion to quash, Google ignores Japanese law in challenging the viability of Team Co.'s proposed civil action. *See* Dkt. No. 16 at 7-8. In reply to Team Co.'s opposition and supporting declarations, Google continues to rely on U.S. legal principles. Google does not provide any competing declaration regarding the requirements of Japanese law. Its principal objection is that the anonymous statement cannot reasonably be understood as a false assertion of fact and is unlikely to have harmed Team Co.'s business. *See* Dkt. No. 18 at 10-12. In any event, at oral argument Google indicated that it does not necessarily take the position that the discovery should be denied; rather, Google's primary interest is in having the Court conduct some sort of review of an applicant's claims before information is produced. Dkt. No. 23.

It remains to be seen whether Team Co. succeeds on the merits of its anticipated

defamation claims. But Google has not made a persuasive case that the proposed civil action for defamation is pretextual or intended solely to harass, or that there is any other reason for this Court to quash Team Co.'s subpoena in the exercise of its discretion under 28 U.S.C. § 1782. The merits of Team Co.'s action should be addressed by the relevant court in Japan.

### C. Whether the Subpoena Circumvents U.S. Policy

In its reply brief, Google raises an additional argument that the discovery Team Co. seeks from Google reflects an effort to circumvent a policy of the United States to protect free speech rights, consistent with First Amendment principles, even if the speaker is a non-citizen residing in a foreign country and the speech is not directed to the United States. Dkt. No. 18 at 7 (citing *Intel*, 542 U.S. at 264-65 (third factor)). As Team Co. correctly observes, Google did not raise this issue in its motion to quash, *see* Dkt. No. 17 at 7, and therefore Team Co. did not have an opportunity to respond to this argument in its opposition.

The Court will not consider arguments raised by the moving party for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

## IV. CONCLUSION

For the reasons explained above, the Court denies Google's motion to quash. Google shall produce documents responsive to the subpoena no later than 30 days from the date of this order.

Any information Team Co. obtains pursuant to the subpoena may be used only for purposes of the anticipated civil action for the violation of Articles 709 and 710 of the Japanese Civil Code, and Team Co. may not release such information or use it for any other purpose, absent a Court order authorizing such release or use.

**IT IS SO ORDERED.**

Dated: February 1, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge

11